G. F. FARROW, Adm'r, *v.* T. S. FARROW *et al.*

HOMESTEAD.  *Infant children.*  Infant children occupying the homestead
with their surviving parent at his or her death, are entitled to the
homestead exemption during their minority, and cannot be deprived
thereof either by their own act, or the act of third persons.

FROM SHELBY.

Appeal from the Chancery Court at Memphis.   W.
W. McDOWELL, Ch.

FINLAY & PETERS for complainant.

ESTES & ELLETT and WEATHERFORD & ESTES for
defendants.

COOPER, J., delivered the opinion of the court.

Bill by G. F. Farrow, as administrator of the es-
tate of J. M. Farrow, deceased, for the administration
of the estate as insolvent, and the sale of realty to
pay debts.   The claims of a number of creditors
have been presented, proved and allowed, showing that
the estate is largely insolvent, and the sale of the
realty necessary.   The infant children of the intes-
tate claim homestead in the land.   The chancellor
held that the children were not entitled to home-
stead.   Upon their appeal, the Referees report in
favor of reversing the decree, and allowing the chil-
dren homestead.   The creditors except.

J. M. Farrow died intestate before the year 1879,. leaving six children, two of whom were of age at the filing of this bill, and the other four under age. The intestate had lived for many years with his wife and children on the land in which homestead is claimed. His wife died before him, but he continued to live on the land with his children until his death. Between ten and twenty days after his death, J. J. Farrow, who had become the guardian of the minor children, removed them to the State of Mississippi, where he resided, and where he and they have since lived. He has rented out the land in which the homestead is claimed for the benefit of his wards. The guardian is himself a creditor of the intestate to the amount of over $3,000.

The Constitution of 1870, Art. XI., sec. 11, provides that: "A homestead in the possession of each head of a family, and the improvements thereon to the value in all of one thousand dollars, shall be exempt from sale under legal process during the life of such head of a family, to inure to the benefit of the widow, and shall be exempt during the minority of their children occupying the same." The act of 1870, 2nd session, ch. 80, passed in compliance with, the provision of the Constitution contained this provision: "A homestead in the possession of each head of a family, and the improvements thereon, to the value in all of one thousand dollars, shall be exempt from sale under legal process during the life of such head of a family, and which shall inure to the benefit of his widow, and shall be exempt from sale in

any way, at the instance of any creditor or creditors, during the minority of the children occupying the same, and until the youngest child reaches the age of twenty-one years." After several provisions relating to the mode of allotting the homestead, section 6, is "The homestead exempt in the possession of a husband shall, upon his death, go to his widow during her natural life, with the products thereof, for her own use and benefit, and that of her family who reside with her, and, upon her death, it shall go to the minor children of the deceased husband, free from the debts of the father, mother, or said children; and, upon the death of said minor child or children, or their arrival of age, the same may be sold," etc.

Both the Constitution and the statute give the homestead in the possession of the head of a family, and provide for its continuing exempt from sale under legal process for the benefit of the widow, and during the minority of their children " occupying the same." Actual possession and occupancy of the homestead seem to be intended to be essential to the continued existence of the exemption. This court has accordingly uniformly held, under the act of 1870, that the homestead would be lost by the permanent abandonment of its occupation by either the husband or the wife. And in the only case in which the right of a minor child has been set up in our books, where the widow had lost her right by abandonment, it was expressly held that to preserve the right of homestead to a minor child, continued occupancy after

the death of the mother was essential: *Hicks* v. *Pepper*, 1 Baxt., 42. This decision was, however, based upon the assumption that the mother had the right to control the residence of the infant.

"The general and only sound doctrine," says Judge Thompson, " is that the homestead reservation which passes, under the statutes of the various States, to the widow and minor children, upon the death of the husband and father, is contingent upon occupancy of the premises by the widow and children, as in other cases. Otherwise the exemption becomes, not a reservation of a homestead, but a reservation of land of a certain quantity or value, irrespective of its uses. But, he adds, a tendency is discovered on the part of the courts to relax the requirement of literal occupancy by a widow, and to dispense with it altogether in the case of orphan children": Thomp. on Homestead, sec. 550. It is upon the latter class of decisions, cited in section 243 of the same work, that the Referees rest their report. And it must be admitted that in the case of minor orphan children, who cannot possibly in person manage the homestead, and may not be able to find a guardian to occupy it with them, the courts have a very strong inducement to follow the spirit of the act, and not its strict letter. Accordingly, the courts of Arkansas, under a statute which gives the homestead exemption "during the time it shall be occupied by the widow, child or children," have held that actual occupancy by the minor children, where both parents are dead, is not necessary. It is the duty of the guardian,

they say, to take possession of the homestead, and lease or rent it for the benefit of the children: *Booth* v. *Goodwin,* 29 Ark., 633; *Johnston* v. *Turner,* 29 Ark., 280. These courts lay stress upon the fact that the children, after the death of their parents, are incapable of waiving or abandoning the homestead right either by act or deed. And it may be added in the case now before us, the guardian had no authority to change the domicile of the wards: *Allen* v. *Thomason,* 11 Hum., 536. It also appears that the guardian of these wards had an interest in conflict with their rights by reason of the fact that he was a creditor of their father's estate.

We have held, in accord with the current of authority, that after the right of homestead has been once acquired by the head of a family, and the homestead occupancy is still continued, the right will not be lost by the death or absence of the wife and children: *Webb* v. *Cooley,* 5 Lea, 722. And we concur with the Referees in thinking that the fact that the wife died before the father would not affect the right of the children to the homestead. The whole case is therefore narrowed down to the question of the necessity of actual occupation by the infant children, or, *per contra,* the effect of their involuntary removal.

A majority of the court are of opinion that the right of homestead of minor children is not dependant upon the actual and continuous occupation of the premises, and that the words of the statute "occupying the same," mean, and are complied with by occupying the homestead at the time the right accrues. Af-

ter the right has accrued, the infant cannot waive it, nor, in view of his disability, deprive himself of it by any act of his own. And *a fortiori* he cannot be prejudiced in his right by the act of a third person. The Legislature, recognizing the right of the parents of children to change their residence and domicil, provided that the homestead exemption should only inure to the benefit of the minor children occupying the same with their surviving parent at his or her decease. It would be contrary to every principle of law relating to the disability of infancy to allow them to be deprived of the right, after it has once accrued, either by their own act or the act of others. And we are unwilling to put a construction upon doubtful language of a statute which would lead to such a result.

The exceptions to the report of the Referees will be disallowed, the decree below reversed, and a decree rendered here in accordance with this opinion, and the cause remanded. The creditors of the estate will pay the costs of this court.