MARGARET CAREY *et al.,* COMPLAINANTS, APPELLANTS, *v.*
KATE CAREY *et al.,* DEFENDANTS, APPELLEES.*

(*Knoxville,* September Term, 1931.)

Opinion filed December 5, 1931.

---

*On decree of divorce as relieving father of support of minor children, see annotation in 15 A. L. R., 569; 9 R. C. L., 480; R. C. L., Perm. Supp., pp. 2481, 2482.

As to nature of homestead right, see 13 R. C. L., 541; R. C. L., Perm. Supp., p. 3387; R. C. L., Pocket Part, title Homestead, section 3.

488

CHAS. S. KITTS and BOWEN & BOWEN, for complainants, appellants.

NEILL ACUFF and NORMAN B. MORRELL, for defendants, appellees.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The bill in this cause was filed in behalf of Margaret and Marjorie Carey, infants of the age of six years, to assert and establish property rights in the estate of their deceased father, F. M. Carey. The chancellor dismissed the bill upon the answers of the defendants, the widow, and the executors and devisees named in the will of F. M. Carey. The facts were stipulated.

By proper assignments of error it is contended that the complainants are entitled to an interest in the exempt personalty of the estate, and to homestead rights; and also that the father's obligation to support and maintain complainants was not terminated by his death, but is a charge upon his estate, and that on this ground complainants are entitled to a decree for support against the estate.

Facts material to be stated are that the mother of the complainants, Mrs. Mary M. Carey, the second wife of F. M. Carey, was awarded a decree of absolute divorce from F. M. Carey in May, 1928. The decree gave her $3,000 as alimony and the custody and control of the complainants, but made no provision for their support. The de-

cree made no provision for homestead rights. Since the divorce the complainants and their mother have resided in the home of the latter's father, the mother being now *non compos mentis.*

F. M. Carey contracted a third marriage with the defendant, Mrs. Kate Carey, in November, 1928, and died testate in June, 1930, survived by Mrs. Kate Carey as his widow, five adult children of his first marriage, and the complainants. His estate, valued at $7,500, was devised by his will to his widow and the five adult children, with specific bequests of one dollar each to the two complainants. The widow has not made application for homestead or year's support. Complainants have not been members of their father's household at any time since the divorce in May, 1928.

We have made a laborious search through the books for statutory or judicial declaration which would support a decree in favor of these infant complainants, without success.

The decree of divorce did not relieve the father of his legal obligation to support his minor children. *Evans* v. *Evans,* 125 Tenn., 112; *Owen* v. *Watson,* 157 Tenn., 352.

There are some authorities which hold that when the decree awarding custody of a child to its mother makes definite provision for support by the father, decreeing a definite periodical payment, the obligation so fixed survives the death of the father as a charge upon his estate. *Stone* v. *Bayley,* —— Wash., ——, 134 Pac., 820, 48 L. R. A. (N. S.), 429, and cases cited in note; Schouler, Marriage, Divorce, etc. (6 Ed.), vol. 2, sec. 1916. But none has been found which would extend the obligation for support beyond the death of the father,

when not resting upon contract or definite adjudication. The common-law obligation terminates with the death of the parent. ''A father may, at his death, devise all his estate to strangers, and leave his children upon the parish; and the public can have no remedy by way of indemnity against the executor. 'I am surprised,' said Lord Alvanley, 'that this should be the law of any country, but I am afraid it is the law of England.' '' 2 Kent, 203, citing 5 Vesey, 444. ''At common law the children were not considered as having a property in the effects of the father, because under that law he could disinherit his own issue without assigning any cause therefor in his will.'' *Stratton* v. *Morris,* 89 Tenn., 497, 517.

This principle is recognized by the statutory laws of intestacy and of descent and distribution. No discrimination in favor of minors against adult children is permitted in the division of the estate of their deceased parent, notwithstanding the share of the minors is totally inadequate for their support and they have no other resource. To hold that the obligation of a father to support his infant child may be adjudged a charge against his estate, after his death, would upset the entire fabric of statutory law regulating the distribution and devolution of estates, which is wholly inconsistent and incompatible with such theory.

We hold therefore that Carey's estate cannot be charged with the support of his minor children after the date of his death.

The right of homestead in the realty of the estate, whether vested in the surviving widow or minor children, does not constitute an estate in the lands, but is merely a right of occupancy and use. *Hicks* v. *Pepper,* 60 Tenn. (1 Baxter) 42; *Farrow* v. *Farrow,* 81 Tenn., 120; *Flatt*

v. *Stadler & Co.*, 84 Tenn., 371; *Howell* v. *Jones*, 91 Tenn., 402; *Carrigan* v. *Rowell*, 96 Tenn., 185.

"Before the Act of 1879, actual occupancy was essential to the claim of homestead. 2 Lea, 633; 9 Lea, 176. Since that act actual occupancy is not essential. 15 Lea, 527 (*Rhea* v. *Rhea*). But, being a mere exemption of a right of occupancy, the right of personal occupancy is essential to the existence of the homestead." LURTON, J., in *Howell* v. *Jones*, *supra*.

The widow's right to homestead is guaranteed to her by the constitution, article 11, section 11, and the widow is not put to an election between the right to homestead and provisions of her husband's will in her favor, unless it plainly appears therefrom that such was his intention. "This intention will not be implied from a mere gift to her by the will." *Chamness* v. *Parrish*, 118 Tenn., 739, 747.

But when the homestead is assigned to particular realty, as by metes and bounds, it becomes in the widow "a full and absolute estate in the land embraced, with every right of use or sale that attaches to any other life estate, with the exception that permanent removal from the State works a forfeiture and abandonment of it." *Briscoe* v. *Vaughn*, 103 Tenn., 308, 318; *Beeler* v. *Nance*, 126 Tenn., 589; *Cowan, McClung & Co.* v. *Carson*, 101 Tenn., 515.

Acts of the General Assembly contain provisions designed and intended to protect and preserve the homestead rights of minor children in the lands of their deceased father. But it has been ruled that statutory direction that the homestead exemption shall inure to the benefit of both widow and minor children must yield to the direction of the constitution, article 11, section 11,

that it shall "inure to the benefit of the widow." It was accordingly held by this Court that the homestead, after assignment, could be conveyed by the widow, and that her deed could not be impeached by her minor children. *Cowan, McClung & Co.* v. *Carson, supra.*

In *Carrigan* v. *Rowell,* 96 Tenn., 185, 189, it was said that the homestead right of minor children, after the death of their father, "had not attached and was subsidiary to that of their mother, who is still living." It was therefore held in that case that the mother's removal with her children from the State was not only a forfeiture of her own right of homestead, but of the subsidiary right of her children.

The Act of 1870, chapter 80 (Shannon's Code, section 3807), provides: "The homestead exempt in the possession of a husband shall, upon his death, go to his widow during her natural life, with the products thereof, for her own use and benefit, and that of her family who reside with her, and, upon her death, it shall go to the minor children of the deceased husband, free from the debts of the father, mother, or minor children," etc. The language and terms of this statute exclude any present right in the complainants to the homestead to which the surviving widow is entitled, both under the statute and under the constitution. If homestead is assigned to the widow and she should die without making other disposition of it, which the authorities cited would seem to authorize, the question may then arise whether the complainants, being still minors, would succeed to the homestead under the statute cited.

We think it proper to observe that the plight of these children is not the result of deficiency in the law regulating domestic relations. Section 3810 of Shannon's

Code (Acts 1870, chapter 80, section 8) authorized the court, granting the divorce to their mother, to vest in her the title to their father's homestead exemption, which upon her death would pass to them. This right in their mother was lost when she did not seek and obtain it. *Moore* v. *Ward,* 107 Tenn., 731. Apparently the mother conceived that the interests of herself and her children would be better served by the award of alimony in cash, in a sum equal to approximately one-third the value of her husband's property. And in this she was entitled to act for herself and her children.

The stipulation of facts upon which the chancellor heard the cause enumerates the articles of exempt personalty belonging to the estate, and values them at about forty-five dollars. The statute gives these items of property to the widow "for herself and in trust for the benefit of the children of the deceased." Shannon's Code, section 4023.

It clearly was not contemplated that the widow should be required to sell these articles of exempt property for division between herself and the minor children of her deceased husband. This statute, the provision for a year's support which is "the absolute property of the widow" (Shannon's Code, section 4021), and the provision for homestead, together manifest and give effect to "the policy of the law to keep the family together, at least for a year, and to make the widow the head of the family." *Major* v. *Major,* 111 Tenn., 193.

The value of the exempt property is negligible, and there is no practical method by which the widow could use it for the benefit of complainants who, by decree of court, are required to reside elsewhere than in her home.

We conclude therefore that the chancellor correctly

dismissed the bill, and his decree will be affirmed. The costs of the chancery court and of this court will be adjudged against the defendants, the executors, for which they will be entitled to credit as expenses of administration of the estate of F. M. Carey.